## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSE JUAN CHAVEZ-ALVAREZ,** | : | **CIVIL NO. 1:12-CV-2130** |
| | : | |
| **Petitioner,** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MARY SABOL, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.      Introduction

In this case, we are called upon to examine the pre-removal detention experienced by Jose Juan Chavez-Alvarez, an alien and a previously convicted felon, who is the subject of removal proceedings. While the period of this detention is significant and now exceeds one year, we find that immigration officials have generally acted with dispatch in this case, and that much of the current delay is attributable to the petitioner's efforts to resist removal, legal efforts that have thus far been unavailing. Accordingly, while we find this to be a close case, at present we recommend that this petition be denied, but without prejudice to the renewal of this claim should the delays in these proceedings persist and become excessive.

1

## II. Statement of Facts and of the Case

The factual narrative of this case began more than a decade ago, on September 24, 2002, when the petitioner, Jose Juan Chavez-Alvarez, a Mexican national serving in the United States armed forces, was convicted following a General Court-Martial of violations of Uniform Code of Military Justice, including charges of making false statements and sodomy. (Doc. 18, Ex. 1, General Court-Martial Order, at 1) Chavez-Alvarez was sentenced to 18 months of confinement, (id., at 2), and according to the petitioner he served approximately 13 months of this sentence before he was released. (Doc. 1 at 12)

A decade later this conviction formed the basis for immigration removal proceedings that were instituted against Chavez-Alvarez. On June 5, 2012, Chavez-Alvarez was detained and served with a Notice to Appear (NTA), notifying him that he was subject to removal due to his conviction for an aggravated felony, a crime of violence, with a term of imprisonment of at least one year. (Doc. 18, Ex. 2, Notice to Appear) On June 29, 2012, additional charges of deportability were issued, notifying Chavez-Alvarez that he was also subject to removal since he had been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. (Id., Ex. 3, Notice of Additional Charges of Inadmissibility/ Deportability.)

At the outset of these removal proceedings, on June 7, 2012, Chavez-Alvarez sought bail, filing a Motion for Bond Hearing. (Id., Ex.4) On July 11, 2012, the Immigration Judge denied his request, finding that Chavez-Alvarez was subject to mandatory detention under 8 U.S.C. §1226(c)(1)(B) because he had been convicted of an aggravated felony. (Id., Ex. 5, Memorandum, at 2; Ex. 6, Order.) Chavez-Alvarez appealed the Immigration Judge's decision denying his request for a bond hearing, (Id., Ex. 7, Notice of Appeal.) But the Board of Immigration Appeals, (BIA) dismissed the appeal on September 26, 2012, finding that ultimately, a determination on this issue may be made by the Immigration Judge during removal proceedings. (Id., Ex. 8, Order at 2.)

Over the following ten months, the Immigration Judge conducted extensive removal proceedings in Chavez-Alvarez's case. In the course of these proceedings, the Immigration Judge provided Chavez-Alvarez numerous opportunities to contest removal. Thus, the Immigration Judge scheduled ten different listings of the case over this period; granted several requests for continuances by Chavez-Alvarez; issued subpoenas on behalf of Chavez-Alvarez; and entertained briefing and oral arguments by Chavez-Alvarez on numerous matters.

As a result of these proceedings, in November 2012, the Immigration Judge issued a written decision which found that: (1) Chavez-Alvarez's conviction was a

crime of violence under 18 U.S.C. § 16(a); (2) it was a crime of violence for which

Chavez-Alvarez received a sentence of 18 months under 18 U.S.C. § 16(b); and (3)

this offense was a Class A felony. (Id., Ex. 24, Decision and Order, at 14-16.) The

Immigration Court further found that the forced sodomy and false statement

convictions were crimes involving moral turpitude (id., at 17), and that these offenses

did not arise out of a single scheme of criminal misconduct. (Id., at 19.) On the basis

of these findings, the Immigration Judge concluded that Chavez-Alvarez was subject

to removal from the United States since he had been committed an aggravated felony

and two crimes involving moral turpitude for which detention under section 1226(c)

is mandatory. (Id.)

Chavez-Alvarez's counsel then sought relief from removal under other

provisions of the Immigration and Naturalization Act. These proceedings entailed

further briefing, and argument by the parties. In March of 2013, the Immigration

Judge issued a written order finding that Chavez-Alvarez ineligible for relief from

removal, and issued an oral decision ordering Chavez-Alvarez removed to Mexico.

Chavez-Alvarez reserved his right to appeal this ruling, (id., Ex. 18, Oral Decision and

Order), and on April 3, 2013, Chavez-Alvarez filed a Notice of Appeal with the BIA.

(Id., Ex. 19, Notice of Appeal.) On April 16, 2013, ICE filed a motion with the BIA

seeking summary affirmance of the Immigration Judge's decision. (Id., Ex. 20, ICE

Motion for Summary Affirmance.) On April 25, 2013, Chavez-Alvarez filed a brief in opposition to ICE's Motion for Summary Affirmance. (Id., Ex. 21, Brief.) At present, Chavez-Alvarez's appeal remains pending before the BIA.

It is against the background of these proceedings, that we come to consider Chavez-Alvarez's petition for writ of habeas corpus.

## II.    Discussion

### A.    Introduction

In this petition, Chavez-Alvarez challenges his re-removal detention by immigration officials under the mandatory detention provisions of 8 U.S.C. § 1226(c)(1)(B), arguing that the duration of these removal proceedings is excessive and unreasonable. In considering this period of delay, we begin by noting at the outset that this detention was compelled by statute. Section 1226 of Title, 8, United States Code, directs the Attorney General to detain criminal aliens pending removal, stating in clear and precise terms as follows:

> (c) Detention of Criminal Aliens--
>
> (1) Custody.--The Attorney General *shall* take into custody any alien who.--
>            . . .
> (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D).

8 U.S.C. § 1226(c)(1)(B)(emphasis added).

In enacting this mandatory detention requirement for a sub-class of criminal

aliens awaiting removal from the United States, Congress was responding to specific,

compelling immigration concerns caused by the failure to timely deport aliens who

had used the liberties conferred by this nation as a license to commit crimes.  As the

Supreme Court has noted:

> Congress adopted this provision against a backdrop of wholesale failure
> by the INS to deal with increasing rates of criminal activity by aliens.
> See, e.g., Criminal Aliens in the United States:  Hearings before the
> Permanent Subcommittee on Investigations of the Senate Committee on
> Governmental Affairs, 103d Cong., 1st Sess. (1993); S.Rep. No. 104-48,
> p. 1 (1995) (hereinafter S. Rep. 104-48) (confinement of criminal aliens
> alone cost $724 million in 1990).  Criminal aliens were the fastest
> growing segment of the federal prison population, already constituting
> roughly 25% of all federal prisoners, and they formed a rapidly rising
> share of state prison populations as well. Id., at 6-9. Congress'
> investigations showed, however, that the INS could not even *identify*
> most deportable aliens, much less locate them and remove them from the
> country. Id., at 1.  One study showed that, at the then-current rate of
> deportation, it would take 23 years to remove every criminal alien
> already subject to deportation. Id., at 5.  Making matters worse, criminal
> aliens who were deported swiftly reentered the country illegally in great
> numbers. Id., at 3.  The INS' near-total inability to remove deportable
> criminal aliens imposed more than a monetary cost on the Nation.  First,
> as Congress explained, "[a]liens who enter or remain in the United States
> in violation of our law are effectively taking immigration opportunities
> that might otherwise be extended to others." S.Rep. No. 104-249, p. 7
> (1996).  Second, deportable criminal aliens who remained in the United
> States often committed more crimes before being removed.

Demore v. Kim, 538 U.S. 510, 518 (2003).

Recognizing these concerns, Congress mandated the detention of criminal aliens, like the petitioner, who are convicted of aggravated felonies pending completion of removal hearings. In this case, the petitioner falls within the class of criminal aliens who are embraced by the mandatory detention provisions of 8 U.S.C. § 1226. Therefore, by statute, he was subject to mandatory detention pending the entry of a removal order in these proceedings.

Chavez-Alvarez cannot avoid the application of this mandatory detention statute to his case by citing the fact that removal proceedings first commenced in 2012, many years after he completed service of his court martial sentence. Any challenge to the application of the statute to this case based upon the fact that Chavez-Alvarez was not immediately taken into immigration custody following his release from his court martial sentence has now been foreclosed by Sylvain v. Attorney Gen. of U.S., 714 F.3d 150, 157 (3d Cir. 2013).

Having determined as a matter of statutory construction that the petitioner was legally subject to this mandatory detention, we further note that Chavez-Alvarez cannot challenge the mere fact of his pre-removal detention on due process grounds, since that avenue of attack was foreclosed by the United States Supreme Court's decision in Demore v. Kim, 538 U.S. 510 (2003). In Demore, the Court addressed the issue of whether §1226(c)(1)(B)'s mandatory detention provision violates due process.

In terms that are equally applicable here, the Court held that Congress acted within its broad authority to regulate immigration matters when it imposed mandatory detention on this narrow group of criminal aliens facing removal from the United States. As the Court observed:

> In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." Mathews v. Diaz, 426 U.S. 67, 79-80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) . . . . And, since Mathews, this Court has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens. See, e.g., Zadvydas, 533 U.S., at 718, 121 S.Ct. 2491 (KENNEDY, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens"); Reno v. Flores, 507 U.S. 292, 305-306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("Thus, 'in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens" ' ") (quoting Fiallo v. Bell, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), in turn quoting Mathews, supra, at 79-80, 96 S.Ct. 1883)); United States v. Verdugo-Urquidez7, 494 U.S. 259 (1990).

Demore, 538 U.S. at 521-522.

Acknowledging the authority of Congress in this field, the Court then held that: "Detention during removal proceedings is a constitutionally permissible part of that process." Demore, 538 U.S. at 531 (citations omitted). Yet, while reaching the conclusion that mandatory detention of certain criminal aliens did not violate due process, the Court emphasized the very brief duration of most removal proceedings which rarely exceeded five months, id. at 530, and noted that the six-month delay

experienced by the alien in that case was a product of his own actions which delayed the entry of a final removal order. Id. at 531, n. 15. Given the fixed and finite term of any pre-removal detention, the Court held that the fact of this mandatory detention did not violate due process. Yet while Demore rejected a broad due process challenge to pre-removal detention of criminal aliens, in our view consideration of the holding in Demore constitutes only the first part of our responsibility and analysis when reviewing claims like those presented here.

Demore simply held that mandatory detention of certain criminal aliens pending removal proceedings does not, by itself, offend due process. However, the Demore Court based this ruling upon its understanding of the short, fixed and finite term of any detention prior to removal. Thus, while Demore addressed the due process issues that arise from the fact that, for certain criminal aliens, detention pending removal is mandatory, courts still have an independent responsibility to assess whether the duration of any mandatory detention is so extended and unreasonable as to violate due process. Moreover, in those instances where the period of pre-removal detention is found to be excessive courts have granted habeas corpus relief to detained aliens. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004); Alli v. Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009); Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17, 2009);

9

Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008 WL 4820654 (M.D. Pa. Nov. 3, 2008); Nunez-Pimentel v. U.S. Dep't of Homeland Security, No. 07-1915, 2008 WL 2593806 (M.D. Pa. June 27, 2008); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008); Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa. 2007) .

The considerations which must be taken into account in any due process analysis of an excessive pre-removal delay claim have been outlined for us by the United States Court of Appeals for the Third Circuit in Diop v. ICE/Homeland Sec., 656 F.3d 221, 234-35 (3d Cir. 2011). In essence, "Diop laid out a two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill 1226's purposes." Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269-70 (3d Cir. 2012).

The determination of whether the duration of any particular delay has become unreasonable is, by definition, " 'a fact-dependent inquiry that will vary depending on individual circumstances.' " Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 269 (3d Cir. 2012)(quoting Diop, 656 F.3d 233.) Nonetheless, several key benchmarks have emerged defining the contours of this constitutional protection against excessive detention pending removal hearings. For example, this Court has identified "the

following as critical factors in making such determination: (1) whether detention has continued beyond the average times necessary for completion of removal proceedings which were identified in Demore; (2) the probable extent of future removal proceedings; (3) the likelihood that removal proceedings will actually result in removal; and (4) the conduct of both the alien and the government during the removal proceedings. Alli, 644 F.Supp.2d at 543–45." Hernandez v. Sabol, 823 F. Supp. 2d 266, 273 (M.D. Pa. 2011).

Accordingly, in assessing these claims, we must first necessarily look to the length of the detention. When we undertake this assessment, in general, pre-removal detentions spanning a period of months do not present substantial constitutional issues. See e.g., Demore, 538 U.S. at 531(6 months); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010)(one-year detention); Slebo v. District Director, No. 09-1335, 2009 WL 2151347 (M.D. Pa. July 17, 2009)(Munley, J.)(8 months); Wright v. Bureau of Immigration and Customs Enforcement, No. 06-2278, 2007 WL 86263 (M.D. Pa. Jan. 9, 2007)(Conner, J.)(7 months).

In contrast, periods of detention which exceed one year, like the detention currently experienced by Chavez-Alvarez, trigger greater constitutional concerns and may warrant habeas relief. See, e.g., Tijani v. Willis, 430 F.3d 1241 (9th Cir. 2005)(2 years 8 months); Ly v. Hanson, 351 F.3d 263 (6th Cir. 2004)(500 days); Alli v.

Decker, No. 09-698, 2009 WL 2430882 (M.D. Pa. Aug. 10, 2009)(9 and 20 months);

Occelin v. District Director, No. 09-164, 2009 WL 1743742 (M.D. Pa. June 17,

2009)(2 years); Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov.

25, 2008)(16 months); Wilks v. U.S. Dep't of Homeland Security, No. 07-2171, 2008

WL 4820654 (M.D. Pa. Nov. 3, 2008)(2 years); Prince v. Mukasey, 593 F. Supp.2d

727 (M.D. Pa. 2008)(16 months); Madrane v. Hogan, 520 F. Supp. 2d 654 (M.D. Pa.

2007)(3 years). However, when the period of pre-removal detention exceeds a year

or more, these longer detention periods without individualized bail consideration may

be justified if the following criteria are met: (1) the alien is subject to mandatory

detention; (2) much of the pre-removal delay is a function of that criminal alien's

litigation decisions during removal proceedings; and (3) the alien's administrative

efforts to avoid removal have been largely unavailing, suggesting that the removal

proceedings may draw to a close. See e.g., Jah v. Attorney General, 258 F. App'x 394

(3d Cir. 2007) (17-months detention); Tavares v. Attorney General, 211 F. App'x 127

(3d Cir. 2007) (24- months detention); Adler v. Dep't of Homeland Security, No. 09-

4093, 2009 WL 3029328 (S.D.N.Y. Sept. 22, 2009) (15-months detention); Contant

v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months

detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa.

March 4, 2010) (one-year detention); Rodney v. Mukasey, No. 08-1386, 2009 WL

427171 (M.D. Pa. Feb. 20, 2009)(Muir, J.) (18 months).

Yet, there remain temporal limits on the duration of pre-removal detentions which the courts will tolerate. Thus, courts generally agree that where the period of pre-removal detention exceeds two years, some form of bail individualized consideration is typically mandated. See, e.g., Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012)(four years detention); Diop v. ICE/Homeland Sec., 656 F.3d 221, 234-35 (3d Cir. 2011)("In this case, there can be no question that Diop's detention for nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent risk of danger to the community, was unreasonable and, therefore, a violation of the Due Process Clause.")

Further, as these cases reveal, the legal analysis here does not involve simple arithmetic. A qualitative assessment must also be made of the reasons for the delay in removal, and who bears responsibility for that delay. Therefore, when weighing claims of excessive delay made by immigration detainees challenging mandatory pre-removal detention, courts must also carefully assess the reasons for the delay. In this regard, delays attributable to the government litigation decisions weigh heavily against the respondents in conducting this analysis. See Victor v. Mukasey, No. 08-1914, 2008 WL 5061810 (M.D. Pa. Nov. 25, 2008)(16 months due to government litigation decisions, release ordered). This principle applies with particular force when the delay

attributable to government litigation choices in removal proceedings involves

unsuccessful litigation of issues by the government; that is, the government has

detained an alien for a prolonged period and contributed to the delayed completion of

removal proceedings while it has advanced claims that have failed on their merits.  In

such instances, courts often direct bail consideration for detainees who remain in

custody despite their success on the merits in their removal proceedings.  Tkochenko

v. Sabol, 792 F. Supp. 2d 733, 736 (M.D. Pa. 2011)(bail consideration ordered for

detainee held two years who had made substantial showing of likelihood of success

in removal proceedings).

Where the length of any delay is attributable, in part, to actions taken by the

alien in the course of litigating the removal proceedings, courts take differing views.

Some courts have initially declined to hold the government accountable for this type

of delay when conducting a due process analysis, particularly when the alien has been

unsuccessful in advancing claims in the removal proceedings.  See, e.g., Demore, 538

U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay

caused by alien's litigation tactics); Jah v. Attorney General, 258 F. App'x 394 (3d

Cir. 2007) (17- months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d

Cir. 2007) (24- months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL

830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's

litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008). However, as the period of pre-removal delay becomes more protracted, courts have given less consideration to which party may have caused the delay, and have instead focused upon the overall duration of the delay in their due process analysis. See e.g., Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012)(4 years); Diop v. ICE/Homeland Sec., 656 F.3d 221, 234-35 (3d Cir. 2011)(35 months).

Finally, any consideration of an excessive delay claim brought by a criminal alien who is pending removal from the United States should take into account the fact that, upon entry of a final removal order, different statutory and due process protections come into play, protections designed to ensure that aliens who have been ordered removed are not held in custody for an unreasonable period of time. Thus, once a final order of removal is entered, the due process protections afforded to aliens by Zadvydas v. Davis, 533 U.S. 678 (2001) apply. See Matthias v. Hogan, No. 07-1987, 2008 WL 913522 (M.D. Pa. March 31, 2008). Under Zadvydas aliens subject to such final removal orders typically must either be removed, or be given bail consideration, within six months. The availability of this relief from excessive detention following the entry of a final removal order, coupled with what is frequently the finite duration of removal proceedings, greatly reduces any due process concerns

resulting from the duration of the mandatory detention of aliens pending the completion of removal proceedings.

Once the court makes a finding of unreasonable delay, the remedy prescribed by controlling case law is clear: the detainee " is entitled to 'an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community.' Diop, 656 F.3d at 231." Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 271 (3d Cir. 2012).

In this case, with respect to the first aspect of Diop's two-part test for assessing the reasonableness of immigration detention, while we regard this as a close case we find that the duration of the pre-removal detention experienced by Chavez-Alvarez currently has not yet reached unreasonable dimensions. In reaching this result, we note that the Immigration Judge initially acted with dispatch in this matter, promptly scheduling proceedings in this removal case, diligently addressing Chavez-Alvarez's multi-faceted objections to removal and issuing timely rulings. The Immigration Judge also appears to have shown a scrupulous regard for the petitioner' rights, granting him continuances, allowing briefing, and issuing subpoenas at the petitioner's request to fully develop the factual record. While these steps may have contributed to the delay in this matter, these steps were taken at Chavez-Alvarez's request, to

promote an informed resolution of these issues, and the delays requested by Chavez-Alvarez during these proceedings can hardly be attributed to the respondents. See, e.g., Demore, 538 U.S. at 531, n.15; Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F. App'x 394 (3d Cir. 2007) (17- months detention); Tavares v. Attorney General, 211 F.Appx 127 (3d Cir. 2007) (24- months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's litigation tactics); Contant v. Mukasey, No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008). Further, a removal order has been entered in this matter, an order which is currently under review at the BIA. While this matter has been ripe and pending before the BIA for the past 6 months, we do not believe that this pre-decisional delay has yet reached the dimension of the excessive delays that have, in the past, compelled an individualized bail hearing. See, e.g., Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 270 (3d Cir. 2012)(4 years); Diop v. ICE/Homeland Sec., 656 F.3d 221, 234-35 (3d Cir. 2011)(35 months).

Finally, with anticipated entry of a timely decision by the BIA the parties will be in a much more informed position to assess the prospects for future delay, and the need for an individualized bail hearing. Thus, if the removal order is affirmed and

becomes a final order, Chavez-Alvarez's detention will be governed by a different, and more rigorous set of statutory and constitutional protections. See 8 U.S.C. § 1231(a), Zadvydas v. Davis, 533 U.S. 678 (2001). In contrast, if the removal order is set aside by the BIA and the case is remanded for further proceedings, then an assessment of the considerations which go into this due process analysis may begin to weigh in favor of a bail hearing. See Tkochenko v. Sabol, 792 F. Supp. 2d 733, 736 (M.D. Pa. 2011). Of course, if this matter remains pending for an additional protracted period of time without any decision by the BIA, then further individualized bail consideration may also be necessary. See Leslie v. Attorney Gen. of U.S., 678 F.3d 265, 271 (3d Cir. 2012).

At present, however, while the period of this detention is significant and now exceeds one year, we find that immigration officials have generally acted with dispatch, and that much of the current delay is attributable to the petitioner's efforts to resist removal, legal efforts that have thus far been unavailing. Accordingly, while we regard this to be a close case, at present we recommend consistent with case law that this petition be denied, but without prejudice to the renewal of this claim should the delays in the proceedings persist unreasonably. Castellanos v. Holder, 337 F. App'x 263 (3d Cir. 2009) (delay caused by alien's litigation tactics); Jah v. Attorney General, 258 F. App'x 394 (3d Cir. 2007) (17- months detention); Tavares v. Attorney

General, 211 F.Appx 127 (3d Cir. 2007) (24- months detention); Rodrigques v. Holder, No. 09-1764, 2010 WL 830929, *3 (M.D. Pa. March 4, 2010) (one-year detention held attributable to alien's litigation tactics); Contant v. Mukasey,  No. 08-1852, 2009 WL 427244 (M.D.Pa. Feb. 20, 2009) (15-months detention); Prince v. Mukasey, 593 F. Supp. 2d 727 (M.D. Pa. 2008).

## IV.    Recommendation

For the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED without prejudice to renewal at such time, if any, that the delay and detention may become unreasonable and excessive.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of December, 2013.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
